**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ESS FRONTIER LLC,

Plaintiff,

-against-

OSTIUM FOUNDATION; OSTIUM LABS CO.; DELTAX LTD.; DX GROUP LIMITED; KALEDORA KIERNAN-LINN; and JOHN DOE TRANSFEREES 1-10,

Defendants.

Case No. 1:26-cv-07645

# DEFENDANTS' MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER, DENY CONFIRMATION OF ATTACHMENT, AND DENY EXPEDITED DISCOVERY

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND ........................................................................................2

A. The Loans ........................................................................................2

B. The July Security Event ........................................................................................3

C. The NDA and the Post-NDA Data Room ........................................................................................4

D. A&M Provides a Discussion Term Sheet ........................................................................................5

E. Plaintiff Seeks an *Ex Parte* TRO ........................................................................................6

F. ESS's Formation and the Champertous Assignment ........................................................................................7

G. The Weekend Proceedings (September 5-7, 2026) ........................................................................................7

H. Plaintiff's Overbroad Reading of the TRO ........................................................................................9

ARGUMENT ........................................................................................10

I. THE TRO SHOULD BE DISSOLVED ........................................................................................10

A. The TRO Is Prohibited by Settled Second Circuit Law ........................................................................................10

B. ESS Lacks Standing Because the Assignment Is Champertous and Void ............11

C. Plaintiff Cannot Show Likelihood of Success on Its Underlying Claims .............13

D. Plaintiff's Case Rests on NDA-Protected Materials It Agreed Not to Use in Litigation ........................................................................................15

E. Plaintiff Cannot Demonstrate Irreparable Harm ........................................................................................16

F. The Balance of Equities Decisively Favors Defendants ........................................................................................16

II. THE COURT SHOULD DENY CONTINUED ATTACHMENT ........................................................................................17

III. EXPEDITED DISCOVERY IS NOT WARRANTED ........................................................................................19

IV. SUBSTANTIALLY INCREASED SECURITY IS REQUIRED IF THE TRO REMAINS IN EFFECT ........................................................................................19

CONCLUSION ........................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcova Inv. LLC v. Lakhmna*,
No. 26-CV-3729, 2026 WL 2607013 (S.D.N.Y. Sept. 3, 2026)....18

*Am. Optical Co. v. Curtiss*,
56 F.R.D. 26 (S.D.N.Y. 1971)....12

*Ames v. Clifford*,
863 F. Supp. 175 (S.D.N.Y. 1994)....18

*Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Com. Corp.*,
54 F. Supp. 3d 287 (E.D.N.Y. 2014)....17

*Erickson v. Kidder Peabody & Co.*,
166 Misc. 2d 1 (Sup. Ct. N.Y. Cnty. 1995)....19

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)....16

*Fritch v. Bron*,
73 Misc. 3d 860 (N.Y. Sup. 2021)....17

*Genius Grp. Ltd. v. LZG Int'l, Inc.*,
No. 26-CV-03961-MKV, 2026 WL 1759164 (S.D.N.Y. June 17, 2026)....11

*Gerova Fin. Grp., Ltd. v. Reynders, Gray Holdings LLC*,
No. 11-CV-4369 (PGG), 2012 WL 13398356 (S.D.N.Y. Jan. 12, 2012)....19

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308, 119 S. Ct. 1961 (1999)....1, 10

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
43 F.4th 263 (2d Cir. 2022)....19

*KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*,
No. 20-CV-3274 (VM), 2020 WL 2554382 (S.D.N.Y. May 20, 2020)....17

*Keep on Kicking Music, Ltd. v. Hibbert*,
268 F. Supp. 3d 585 (S.D.N.Y. 2017)....18

*Leadenhall Capital Partners LLP v. Advantage Capital Holdings LLC*,
171 F.4th 155 (2d Cir. 2026)....1, 10, 11

*Leasing Control Inc. v. 500 Fifth Ave., Inc.*,
193 A.D.3d 592 (2021) ........................................ 12

*Litwin v. OceanFreight, Inc.*,
865 F. Supp. 2d 385 (S.D.N.Y. 2011) ........................................ 19

*Nokia Corp. v. InterDigital, Inc.*,
645 F.3d 553 (2d Cir. 2011) ........................................ 20

*PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC*,
991 F.3d 1187 (11th Cir. 2021) ........................................ 13

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
612 F. Supp. 3d 263 (S.D.N.Y. 2020) ........................................ 11

*PXP Producing Co. LLC v. MitEnergy Upstream LLC*,
342 A.3d 402 (Del. Ch. 2025) ........................................ 14

*Syracuse Mountains Corp. v. Petroleos de Venezuela S.A.*,
No. 21-CV-2684 (VEC), 2024 WL 3637997 (S.D.N.Y. Aug. 1, 2024) ........................................ 12, 13

*Winter v. Nat'l Res. Def. Council, Inc.*,
555 U.S. 7, 129 S. Ct. 365 (2008) ........................................ 10

**Statutes**

New York Judiciary Law § 489 ........................................ 1, 12

N.Y. C.P.L.R. 6201 ........................................ 7, 17, 18

N.Y. C.P.L.R. 7502(c) ........................................ 7, 18, 19

**Other Authorities**

Fed. R. Civ. P. 64 ........................................ 7

Fed. R. Civ. P. 65(c) ........................................ 20

Fed. R. Evid. 408 ........................................ 1, 4, 6, 14, 15

## PRELIMINARY STATEMENT

Defendants move to dissolve the TRO, deny confirmation of attachment, and deny expedited discovery.[1]

Each ground set forth below independently requires dissolution of the TRO; taken together, they are overwhelming.

**First,** the TRO is an impermissible pre-judgment asset freeze. Plaintiff is an unsecured creditor – one of many. The loan documents contain no restriction on the use of loan proceeds and create no equitable interest in any identified property. The TRO therefore does precisely what the Supreme Court in *Grupo Mexicano* and the Second Circuit in *Leadenhall* held an unsecured creditor cannot do: obtain a pre-judgment freeze on a debtor's general assets to ensure a money judgment can be collected. That legal defect is fatal regardless of the merits.

**Second,** Plaintiff has no standing. ESS Frontier LLC was incorporated three days before this action was filed, received an assignment of the original lender's loan and litigation claims the same day the Complaint was filed, has taken no step consistent with legitimate loan ownership, and exists for the sole purpose of filing this lawsuit. The assignment is champertous and void under New York Judiciary Law § 489.

**Third,** Plaintiff's entire case rests on information it contractually agreed could never be used in litigation. Five of Plaintiff's ten supporting exhibits are data-room materials bearing confidentiality and Rule 408 legends. The NDA's litigation-use bar is categorical and requires that the TRO be dissolved.

[1] For the avoidance of doubt, Defendants also submit this motion and memorandum fully in opposition to confirmation of the attachment, continuation of the restraint, and expedited discovery as set forth in TRO ⁋ 31.

**Fourth,** Plaintiff cannot show irreparable harm. Its counsel acknowledged that the TRO was a negotiating ploy. Plaintiff knew that Ostium Foundation, Ostium Labs Co., DeltaX Ltd., and DX Group Limited (the "Ostium Entities") were represented by sophisticated financial and legal restructuring advisors and had no intent to dissipate assets. Stripped of the NDA-protected term sheet that Plaintiff mischaracterizes as a dissipation threat, Plaintiff's irreparable harm case reduces to: Defendants owe money and have not paid it. That is not irreparable harm.

**Fifth,** the balance of equities is not close. Plaintiff has a calculable money claim fully remediable by an arbitral award. The Ostium Entities face going-concern destruction, user harm, and foreclosure of a consensual restructuring that represents the best available outcome for every creditor, including Plaintiff. Judge Garnett recognized this, excluding ordinary operating expenditures from the TRO's scope expressly to "preserve the business as a going concern" and "because doing so is in the interests of Plaintiff and all creditors."

For similar reasons, attachment should not be confirmed. Attachment is a drastic remedy that requires showings similar to those required for a TRO, which Plaintiff cannot satisfy. The Court also should deny expedited discovery. There is no emergency and Defendants are in compliance with the TRO. At minimum, discovery should remain stayed while the Court determines whether to grant the substantive relief sought herein.

Finally, while Defendants submit that the TRO should be dissolved, if it remains in place then Plaintiff's required bond should be increased considerably.

## FACTUAL BACKGROUND

### A. The Loans

On October 20, 2025, Ostium Foundation and Minghui Zheng executed a Master Digital Currency Loan Agreement (the "Loan Agreement"), governed by New York law and subject to

AAA arbitration in New York County. ECF No. 9-2. The Loan Agreement contains *no restriction on the use of loan proceeds* and no requirement that proceeds be maintained in any particular account or location. *See Id.* On October 20-21, 2025, Zheng transferred 10,000,000 USDC to Ostium Foundation, which accepted the funds. Kiernan-Linn Decl. ⁋ 5. In January 2026, Zheng transferred an additional 10,000,000 USDC, for a total of 20,000,000 USDC. *Id.*

On July 9, 2026, Ostium Foundation returned 5,000,000 USDC and issued a written Loan Repayment Notice. After the non-callable periods expired, Zheng recalled his loan on July 22, 2026. Zheng sent written notice of default on August 3, 2026. Ostium Foundation owes 15,000,000 USDC in principal plus accruing fees. Kiernan-Linn Decl. ⁋⁋ 9, 11.

Plaintiff alleges that, before funding, Ms. Kiernan-Linn made representations about Ostium's use of funds, corporate affiliations and the location of certain accounts. Ms. Kiernan-Linn disputes that she made such representations, but the Court need not resolve that dispute. The Loan Agreement imposed *no* restriction on use of proceeds and no requirement that proceeds be maintained in any particular location. ECF No. 9-2. Moreover, the Loan Agreement contains an integration clause specifying that it "constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements." *Id*. at 16.[2]

### B. <u>The July Security Event</u>

On July 15, 2026, while both loans remained outstanding, the Ostium protocol suffered a catastrophic security failure. Kiernan-Linn Decl. ⁋ 8. An attacker compromised the Ostium protocol's off-chain price-reporting infrastructure and a privileged signer then drained 23,752,746 USDC from the Ostium protocol's liquidity-provider vault. *Id.* The hack left Ostium Foundation

[2] Page numbers refer to the ECF stamped page upon filing.

with challenges to satisfy its creditors in the ordinary course and required it and its affiliates to pursue an out-of-court restructuring. *Id.* ¶10. In the weeks that followed, the Ostium Entities engaged Alvarez & Marsal as financial advisor and Sidley Austin as legal counsel, and initiated a structured multi-creditor process to negotiate a consensual resolution of their obligations. Venter Decl. ¶ 4. It was in this context – a good-faith restructuring effort with professional advisors, not a scheme to evade creditors – that Ostium sought to share sensitive financial and operational information with Zheng to facilitate frank settlement discussions. Venter Decl. ¶¶ 4-6.

### C. <u>The NDA and the Post-NDA Data Room</u>

On August 5, 2026, Ostium Labs Co., Ostium Foundation, and Zheng executed a Confidentiality and Non-Disclosure Agreement (the "NDA") to govern frank settlement discussions. Kiernan-Linn Decl. ¶¶ 12-13. Its key protections:

[redacted]

[redacted]

[redacted]

Following execution, Ostium made sensitive financial and other materials available through a secure, access-controlled data room, bearing confidentiality and Rule 408 legends and a watermark recording the downloading account and date. Kiernan-Linn Decl. ¶ 14.

### D. A&M Provides a Discussion Term Sheet

On August 21, 2026, A&M delivered an initial version of a proposed recovery framework term sheet to Zheng. A revised version was provided on August 28, 2026 (the "Term Sheet"). The Term Sheet was a proposal for a consensual out-of-court restructuring, prepared with the assistance of A&M and confidentially shared with certain major creditors as part of that process. Its tiered recovery schedule – offering higher cash recovery percentages to creditors who elected earlier – is a standard feature of out-of-court restructuring proposals, used routinely to encourage early creditor alignment and reduce the costs and uncertainty of a prolonged process. Venter Decl. ⁋ 7.

On September 3, 2026, at 11:11AM ET, A&M received a message from Zheng stating that "We have been looking over the docs with our lawyers and have some questions for your lawyers, you can reach them at [e-mail contact information]." Sidley reached out to Zheng's lawyers less than 20 minutes later, at 11:28AM, requesting availability for a call that day but did not hear back. Sidley followed up with a renewed request for a call at 8:23AM the next morning. Over 8 hours later, Sidley received a response indicating a willingness for a call that day, which was subsequently held at 5:30PM ET. Venter Decl. ⁋ 8.

During that call, the Ostium Entities' restructuring counsel introduced themselves and Sidley's role, briefly described the restructuring process and the involvement of A&M, and indicated that they would welcome an opportunity to speak further about the Term Sheet and a consensual resolution. Plaintiff's counsel said he was not yet familiar with the details of the term sheet and would need to review it and speak with his client before further discussions and negotiations. The call was brief, cordial, and entirely preliminary in nature. Plaintiff's counsel did not raise any concern about imminent asset dissipation, did not indicate any intent to seek emergency relief, and expressed no urgency of any kind. No reference was made to Plaintiff's

need for legal relief of any kind, imminent or otherwise. Plaintiff's counsel did not suggest that emergency judicial intervention was being considered, and expressed no concern about asset dissipation. Venter Decl. ⁋ 9.

At one point, Plaintiff's counsel indicated sympathy and understanding for the difficult situation facing the Company. The Ostium Entities' restructuring counsel indicated a willingness to extend the September 4, 2026 "Early Participation Deadline," subject to client approval. The call ended without any indication that Plaintiff intended to seek emergency court action that evening. Venter Decl. ⁋ 10.

Plaintiff has characterized the tiered schedule as a dissipation threat. That purposefully and tactically misreads a standard deal-economics construct. Nothing in the Term Sheet indicated that Defendants intended to improperly dissipate, conceal, or transfer assets. To the contrary, the Term Sheet proposed [redacted] – the opposite of dissipation. And in any event, the Term Sheet is NDA- and Rule 408-protected – Plaintiff cannot use it for any purpose in this proceeding. Venter Decl. ⁋ 11.

### E. **<u>Plaintiff Seeks an *Ex Parte* TRO</u>**

A few hours after the September 4, 5:30 PM telephone call, without further communication, Plaintiff filed the Complaint and TRO application *ex parte*. During a telephonic conference at 9:30 p.m. on Sunday, September 6, Plaintiff's counsel acknowledged that the TRO was filed as a negotiating ploy to obtain improved settlement terms. Venter Decl. ⁋ 12, 13.

### F. ESS's Formation and the Champertous Assignment

Plaintiff ESS appears not to have existed until September 1, 2026.[3] Ostium Foundation is not party to any loan agreement with ESS. Zheng made the loans. Zheng purports to have experienced the alleged misrepresentations. Zheng recalled the loans and declared default. On the same day that Plaintiff filed the Complaint and TRO, Zheng purported to have assigned ESS "all" litigation claims, including "all rights to arbitrate, litigate, settle, enforce, collect, and obtain provisional relief." ECF No. 9-1 at 2. Zheng receives the "Net Recovery" of all proceeds less ESS's "fee for [] services" from any judgment. *Id.* ESS has not commenced the AAA arbitration, made any demand in its own name, or taken any step consistent with legitimate loan ownership. The sole purpose of the assignment was to file this lawsuit the same day.[4]

### G. The Weekend Proceedings (September 5-7, 2026)

**September 5:** Judge Garnett issued the TRO and Order of Attachment *ex parte* on the Saturday evening of Labor Day weekend on the basis of Plaintiff's false representation that "Ostium [has] plans to dissipate what money remains as fast as possible[.]" ECF No. 8 at 5. Plaintiff referenced confidentiality restrictions in the Loan Agreement in seeking to redact or seal certain materials, but *did not inform the Court about the existence of the NDA*, much less seek to comply with it.

The Order: (i) attached Ostium Foundation property up to $15,000,000 under Fed. R. Civ. P. 64, N.Y. C.P.L.R. 7502(c), and NY C.P.L.R. Article 62; (ii) temporarily restrained Defendants from transferring, assigning, encumbering, concealing, dissipating, or moving "Covered Property" as defined in TRO ¶ 16, effective upon actual notice without formal service; and (iii) imposed an

[3] Delaware Division of Corporations, File No. 10754781, ESS FRONTIER LLC.
[4] Plaintiff's counsel has asserted by email that Zheng is ESS's sole member, but has provided no corroborating information.

expedited discovery regime including a 48-hour verified account-disclosure deadline. TRO ¶¶ 16-17, 22.

**September 6:** On the Sunday of Labor Day weekend, before Defendants could respond, Plaintiff obtained a second *ex parte* order authorizing alternative service and backdating it to September 5 – immediately triggering the disclosure clock – despite Sidley's immediate email confirming it was seeking authorization to accept service, and based on the false representation that Defendants would otherwise "move assets" absent such relief (the TRO already applied upon actual notice). Plaintiff's Letter Motion for Interim Relief and Alternative Service dated September 6, 2026.

Defendants' counsel for the Ostium Entities wrote to Judge Garnett requesting a conference and extension of the September 7 disclosure deadline, explaining that: (i) a 48-hour window running from backdated September 5 service over a holiday weekend did not constitute meaningful notice; (ii) TRO ¶ 22's required disclosure – every financial account through which Covered Property had passed since August 1, 2025, a lookback of over a year across multiple entities and jurisdictions – could not be compiled responsibly in 48 hours; and (iii) there was no dissipation risk from a brief extension because asset-restraint and preservation obligations remained in full force. Judge Garnett thereafter stayed all disclosure deadlines "until the parties have a conference before their assigned judge." Judge Garnett Endorsement Order of Defendants' September 6, 2026 Letter Motion.

**September 7:** Defendants' counsel for the Ostium Entities wrote again urgently after Plaintiff's counsel confirmed in a late-night call that the TRO, on Plaintiff's reading, prohibits all activity on the Ostium platform and then at 3:45 AM confirmed in writing that *all ten* ordinary expenditure categories the Ostium Entities listed potentially violate the TRO: (i) payroll and

employee costs; (ii) IT and infrastructure costs; (iii) rent; (iv) independent director fees; (v) legal, financial, restructuring, accounting, tax, and other advisor fees; (vi) general low-value operating expenses such as software subscriptions, payment processing, and travel; (vii) advertising and marketing; (viii) user reimbursements for losses and disruptions; (ix) contractual interest and financing charges; and (x) hedging-related capital.

After counsel for the Ostium Entities sought clarification and a bond increase, Judge Garnett excluded *all* of the above expenditure categories from the TRO "to preserve the business as a going concern until the assigned judge has the opportunity to weigh in, and because doing so is in the interests of Plaintiff and all creditors." Judge Garnett Endorsement Order, September 7, 2027. The Court denied the bond increase "without prejudice to renewal before the assigned judge." *Id.* Defendants have been in full compliance with the TRO as narrowed.

**H. <u>Plaintiff's Overbroad Reading of the TRO</u>**

Plaintiff continues to assert that the TRO prohibits all platform trading, professional fee payments, payroll, and other ordinary course payments. Plaintiff is trying to force Defendants into a situation in which they have no choice but to pay Plaintiff at the expense of all other creditors, something that Defendants are not willing to do and understand they cannot do consistent with Cayman law. As evidence of this strategy, on September 9, when counsel for the Ostium Entities noted that Plaintiff's portion of the joint status letter to this Court grossly mischaracterized orders by Judges Liman and Subramanian regarding the issue of champerty, Plaintiff's counsel responded that "[w]e may have to go down a wind-up or bankruptcy route soon if our client's funds keep getting spent in this way." In other words, Plaintiff threatened to force Defendants into bankruptcy merely for attempting to ensure that the Court is properly informed on the litigated issues –

unfortunately, this is consistent with Plaintiff's bad faith actions since the commencement of this action.

## ARGUMENT

## I. THE TRO SHOULD BE DISSOLVED

To obtain or maintain a TRO, a plaintiff must establish (1) likelihood of success on the merits, (2) irreparable harm, (3) that the balance of hardships tips in its favor, and (4) that the public interest would not be disserved. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008). ESS fails every element. We address first the dispositive legal bar on the TRO itself, then standing, then irreparable harm, then the merits of the underlying claims, and finally the balance of equities.

### A. The TRO Is Prohibited by Settled Second Circuit Law

The TRO fails as a matter of law before the Court reaches standing, merits, or equity. The Supreme Court held in *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 330, 119 S. Ct. 1961, 1973 (1999), that "before judgment (or its equivalent) an unsecured creditor has no rights at law or in equity in the property of his debtor." The Second Circuit applied and reinforced this rule in *Leadenhall Capital Partners LLP v. Advantage Capital Holdings LLC*, 171 F.4th 155, 162 (2d Cir. 2026), holding that "[t]he point is simply that where a creditor claims no rights in a debtor's assets, neither law nor equity shall operate to grant such rights pre-judgment." An injunction whose purpose is simply "ensuring the legal debt can be paid" constitutes "equitable assistance in the collection of a legal debt" – "a recourse precisely foreclosed by *Grupo Mexicano*." *Id.* at 165-166.

"[A] preliminary injunction may restrain fungible assets like money without identifying particular property [] only where the plaintiff is pursuing a claim for final equitable relief[.]"

*Leadenhall*, 171 F.4th at 164; *see also Genius Grp. Ltd. v. LZG Int'l, Inc.,* No. 26-CV-03961-MKV, 2026 WL 1759164, at *3 (S.D.N.Y. June 17, 2026) ("[L]itigation over the enforceability of an arbitral award is essentially a quarrel[] about . . . [a] contract . . . [a]nd [a] claim for money due and owing under a contract is quintessentially an action at law.") (internal quotations omitted). Plaintiff's claims are legal, not equitable. The core of every count – repayment of an unpaid loan – is a contract claim for money damages.

Plaintiff recognized this problem and sought to draft around it, but the inescapable facts preclude artful drafting. The TRO purports not to restrain "general assets held only to satisfy a potential money judgment" and instead only restrains Covered Property – defined to include Zheng's loan proceeds and "property directly traceable to those proceeds" – up to the amount of $15 million. TRO ¶¶ 16-18. This is form over substance.

The Loan Agreement contains no restriction on use of proceeds. ECF No. 9-2. The Ostium Entities were free to and did use such funds for general operating expenses. Plaintiff has since insisted that Defendants need only preserve $15 million and "demonstrate that spending will leave the protected property intact." Plaintiff's September 7, 2026 Response Letter to Judge Garnett. Because money is fungible, this type of restraint for purposes of ensuring that sufficient property remains available to satisfy a money judgment is exactly what *Leadenhall* forbids. *Leadenhall*, 171 F.4th at 164.

### B. ESS Lacks Standing Because the Assignment Is Champertous and Void

Even if the TRO were otherwise lawful, ESS has no standing to seek it. An invalid assignment "deprive[s] Plaintiff[] of both Article III and prudential standing." *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 278 (S.D.N.Y. 2020).

Section 489(1) of the New York Judiciary Law prohibits assigning any "claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon." A champertous assignment is void as against public policy. *Am. Optical Co. v. Curtiss*, 56 F.R.D. 26, 31 (S.D.N.Y. 1971); *see also Leasing Control Inc. v. 500 Fifth Ave., Inc.*, 193 A.D.3d 592, 593 (2021) (affirming dismissal on champerty grounds where shell company assignee commenced litigation two days after assignment).

Every indicator here compels a finding of champerty. ESS did not exist at the time of the loans. It was incorporated three days before this action was filed. The assignment was executed the same morning as the Complaint. The one-page-plus assignment document is overwhelmingly focused on litigation rights: it conveys "all rights to arbitrate, litigate, settle, enforce, collect, and obtain provisional relief" and guarantees Zheng the "Net Recovery" in all circumstances, even upon reassignment. ECF No. 9-1 at 2. ESS took no step consistent with genuine loan ownership: no arbitration filed, no demand made, no commercial conduct – only this emergency application, filed hours after the assignment.

Even if true that Zheng is ESS's sole member, that would not save the assignment. The decision in *Syracuse Mountains Corp. v. Petroleos de Venezuela S.A.*, No. 21-CV-2684 (VEC), 2024 WL 3637997, at *4-6 (S.D.N.Y. Aug. 1, 2024), is directly on point here. Certain "Shareholders" incorporated a new entity called "Syracuse" in order to pursue litigation relating to notes that they held. *Id.* at *2. Syracuse agreed "to pay any recovery to the Shareholders." *Id.* at *5. The Court recognized that "the relevant exception – that the champerty doctrine does not apply to plaintiffs enforcing preexisting rights in a security – is limited to circumstances where the *assignee*, not the *assignor*, has a preexisting right." *Id*. (emphasis in original). "Even though the Shareholders had preexisting rights in the Notes, Syracuse had none," being "a company created

years after the Notes were originally purchased and just months before it sued on the Notes." *Id.* The Court observed that, "with this timing, it is impossible for Syracuse to have had a preexisting right." *Id.*; *see also PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC*, 991 F.3d 1187, 1196 (11th Cir. 2021) (holding that under New York law, "a new entity created for the purpose of obtaining and litigating" the assigned claims "was a stranger to the underlying dispute[]" and had no preexisting rights).

Ultimately, even with favorable facts that do not exist here – including pre-litigation efforts by the assignee to enforce the notes – the *Syracuse* Court concluded that "no reasonable fact finder could conclude other than that the transfers were made for the purpose of litigation and, therefore, were champertous." *Syracuse*, 2024 WL 3637997 at *6. This Court should hold the same.[5]

### C. <u>Plaintiff Cannot Show Likelihood of Success on Its Underlying Claims</u>

Even setting aside standing, Plaintiff cannot show likelihood of success on the underlying claims.

*Breach of contract (Count I).* Ostium Foundation's repayment obligation is not in dispute – what is in dispute is whether Plaintiff can use NDA-protected materials to support the TRO and attachment, and whether ESS has standing to bring the claim at all. If either fails, there is no basis for emergency relief.

*Fraudulent inducement and concealment (Count II).* The fraud theory rests entirely on alleged pre-loan representations about Ostium's hedging structure and the identity of its hedging

[5] Plaintiff's portion of the joint letter submitted to this Court on September 8, 2026 asserted that "[m]ultiple Judges in this District and others have upheld similar assignments, including Judge Liman and Judge Subramanian" and asserted that the champerty doctrine therefore does not apply. Defendants requested copies of the referenced orders from Judges Liman and Subramanian. Judge Liman's transcript ruling says nothing at all about champerty, merely addressing common law assignment principles. Judge Subramanian's transcript ruling does not address assignment issues at all, much less say anything about champerty. As far as Defendants can determine, issues of champerty were not even *raised* before either Judge. Defendants hope and expect that Plaintiff will not continue to misrepresent these authorities in opposing this Motion.

counterparty. But those alleged representations – even taken at face value – were made orally and informally, and the parties then negotiated and executed detailed written loan documents that contained *no* representation about the hedging structure, no covenant about counterparty independence, no use-of-funds restriction, and no audit right. Zheng had every opportunity to negotiate protections he now claims were essential – independent DeltaX financials, ownership disclosures, collateral records, minimum capital covenants, direct recourse. He did not. His post-hoc fraud theory asks the Court to rewrite a loan agreement he chose to execute without those protections.

*Dissipation and voidable transfers (Counts I, V).* Plaintiff's dissipation theory rests on: (a) the NDA- and Rule 408-protected Term Sheet, which Plaintiff cannot use and which reflects standard deal economics in any event; (b) Kiernan-Linn's July 9 statement about "migrat[ing] liquidity out of TradFi accounts," which describes routine collateral management during a post-hack restructuring, not asset concealment, ECF No. 1 at 13; and (c) blockchain tracing that Plaintiff claims shows loan funds "did not go where Plaintiff was led to believe." ECF No. 8 at 9. But the loan documents contained no restriction on where funds could go. Using loan proceeds for platform operations and trading is exactly what an operating DeFi protocol does. Plaintiff's tracing shows the ordinary operations of a business Zheng chose to fund without use-of-funds covenants.

*Alter ego (Count VIII).* The alter-ego theory is not supported by the emergency record. "Delaware public policy does not lightly disregard the separate corporate form…[and] will disregard the corporate form only in the exceptional case." *PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416–17 (Del. Ch. 2025) (internal quotations omitted). Related entities sharing management and conducting intercompany transactions is ordinary corporate structure, not veil-piercing. *Id.* at 418-419. Plaintiff's evidence is Ostium's own financial

reporting, obtained under the NDA and not usable in this proceeding even if it provided a basis for an alter ego claim, which it does not.

### D. <u>Plaintiff's Case Rests on NDA-Protected Materials It Agreed Not to Use in Litigation</u>

Five of Plaintiff's ten supporting exhibits – Exhibits F, G, H, I, and J to the Zheng Declaration – are Data Room materials bearing confidentiality and Rule 408 legends, with watermarks recording download after NDA execution. Plaintiff's violations are systematic:

[redacted]

[redacted]

[redacted]

[redacted]

While Plaintiff redacted and sealed certain documents, it did so on the basis of confidentiality restrictions in the Loan Agreement. ECF No. 5. Plaintiff did not inform the Court that the NDA even existed, much less seek to comply with it as to the settlement communications and other confidential materials shared pursuant to that agreement. Even the "redacted" public versions of Plaintiff's papers preserve the Recovery Framework's structure, deadlines, releases, and collateral terms – the operative substance. Redaction that preserves substance does not cure

the violation. A TRO procured on the back of materials the plaintiff was contractually barred from using in litigation cannot stand.[6]

**E. Plaintiff Cannot Demonstrate Irreparable Harm**

Irreparable harm is the "single most important" factor in the TRO analysis. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Harm is not irreparable if remediable by money damages. *Id.* Plaintiff's counsel acknowledged that the TRO is a negotiating ploy, not motivated by any real fear of dissipation. That admission alone defeats any claim of irreparable harm.

Plaintiff's only asserted evidence of dissipation risk is the NDA-protected Term Sheet, which Plaintiff cannot use. In any event, Plaintiff misreads it. The Term Sheet shows an offer made to creditors to restructure the Ostium Entities' obligations consensually. The affirmative evidence shows the opposite of dissipation risk. The Ostium Entities are represented by Alvarez & Marsal and Sidley Austin in an active multi-creditor restructuring. They have complied with every TRO obligation as narrowed. There is no evidence of any hidden transfer, offshore flight of assets, or intent to render a judgment uncollectable. There never was. Venter Decl. ¶¶ 4-6, 14.

**F. The Balance of Equities Decisively Favors Defendants**

Judge Garnett already found that carving out ordinary operating expenditures is "in the interests of Plaintiff and all creditors." Judge Garnett Endorsement Order, September 7, 2027. That finding acknowledges what Defendants have said from the start: destroying Ostium's going-concern value harms everyone, including Plaintiff. Unfortunately, even a narrowed TRO is hugely disruptive as it precludes Defendants from being able to negotiate the type of consensual out-of-court restructuring that is in the best interest of all. There is a clear equitable need on Defendants'

[6] Plaintiff asserted in the joint status letter submitted to the Court on September 8, 2026 that the NDA was obtained through fraud, a bald accusation backed by no evidence whatsoever.

side to dissolve the TRO. *See KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*, No. 20-CV-3274 (VM), 2020 WL 2554382, at *9 (S.D.N.Y. May 20, 2020) (dissolving TRO because "preventing [the Company] from transacting business could place the assets of all investors in peril").

By contrast, Plaintiff's side of the ledger involves an unsecured lender – one of many creditors – who holds a calculable claim for money damages, fully remediable by an arbitral award, against a company actively engaged in a professional multi-creditor restructuring with no evidence of dissipation intent. The comparison is not a close one.

## II. THE COURT SHOULD DENY CONTINUED ATTACHMENT

"Because of the harsh nature of attachment and because it is in derogation of the common law, the courts have strictly construed the attachment statute in favor of those against whom it may be employed." *Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Com. Corp.*, 54 F. Supp. 3d 287, 298 (E.D.N.Y. 2014) (citation omitted). Plaintiff has not met its burden for attachment under any New York statute.

N.Y. C.P.L.R. 6201(3) requires an intent to dissipate assets or defraud creditors. N.Y. C.P.L.R. § 6201(3). Plaintiff's dissipation case fails for the reasons stated above. In addition, "allegations raising a suspicion of an intent to defraud are not enough. Vague and conclusory allegations without evidentiary facts are insufficient for prejudgment attachment." *Fritch v. Bron*, 73 Misc. 3d 860, 863 (N.Y. Sup. 2021). There is no evidence of intent to defraud. The loan documents contained no use-of-funds restriction. Plaintiff cannot identify which contractual provision was violated by the alleged use of proceeds – because there was none. Using loan proceeds for platform operations is entirely consistent with the contract Plaintiff executed.

Likewise, N.Y. C.P.L.R. 6201(1) is meant to apply to foreign corporations where there is a dispute over jurisdiction, which there is not here. "When jurisdiction already exists, attachment should issue only upon a showing that drastic action is required for security purposes." *Keep on Kicking Music, Ltd. v. Hibbert,* 268 F. Supp. 3d 585, 591 (S.D.N.Y. 2017); *see also Ames v. Clifford,* 863 F. Supp. 175, 177 (S.D.N.Y. 1994) ("New York courts have required an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk of the enforcement of a future judgment.") (citations omitted). Again, there is no such showing here. In addition to the statutory requirements for attachment, Plaintiff must also demonstrate a likelihood of success on the merits, for which reasons stated herein, they have failed to do. *Alcova Inv. LLC v. Lakhmna*, No. 26-CV-3729, 2026 WL 2607013, at *2 (S.D.N.Y. Sept. 3, 2026).

The court in *Alcova* found that the same arguments Plaintiff makes here – a foreign domiciliary with vaguely-alleged intent to defraud – was "insufficient to justify the 'extraordinary remedy' of attachment." *Alcova*, 2026 WL 2607013, at *1. The Court also declined to grant attachment based on its wide discretion under CPLR 6201, because "[e]ven if the plaintiff makes out a case for attachment under CPLR 6201, its granting is still discretionary with the court . . . and if the judge should perceive from the papers that the plaintiff does not need an attachment either for jurisdiction or security, discretion is appropriately exercised against it even though a CPLR 6201 showing has been made." *Id*. at *2. This action is a quintessential example of a request for which discretion should be exercised against a finding of attachment, where Plaintiffs violated an NDA to improperly seek an *ex parte* attachment with no evidence of irreparable harm.

Finally, Plaintiff is not entitled to attachment under N.Y. C.P.L.R. 7502(c) either. "Absent a showing that [Defendant] intends to compromise its assets to the detriment of petitioners,

provisional relief pursuant to CPLR 7502(c) is not appropriate." *Erickson v. Kidder Peabody & Co.*, 166 Misc. 2d 1, 5 (Sup. Ct. N.Y. Cnty. 1995); *see also Gerova Fin. Grp., Ltd. v. Reynders, Gray Holdings LLC*, No. 11-CV-4369 (PGG), 2012 WL 13398356, at *6 (S.D.N.Y. Jan. 12, 2012). Plaintiff's own authority requires a "stated intent to dispose of [] assets." *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 271 n.2 (2d Cir. 2022). Defendants have consistently stated the opposite. Working toward a consensual restructuring is not evidence of an intent to dispose of assets.

## III. EXPEDITED DISCOVERY IS NOT WARRANTED

Expedited discovery requires "some connection between the expedited discovery and the avoidance of irreparable injury." *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011). Because Plaintiff cannot show irreparable harm and Defendants have demonstrated full compliance with the TRO, there is no basis for an expedited discovery regime. *See id.* (no justification where defendants represented they "have undertaken appropriate steps to preserve all potentially relevant materials…"). The discovery that Plaintiff seeks – burdensome disclosures tracking assets across numerous accounts over more than a year, Rule 34 requests, depositions, production of bank and brokerage account records, third party discovery – would be massively burdensome and distracting while Defendants seek to stabilize their business. Discovery should be denied entirely, but at minimum should remain stayed pending resolution of this motion and then placed on a reasonable schedule.

## IV. SUBSTANTIALLY INCREASED SECURITY IS REQUIRED IF THE TRO REMAINS IN EFFECT

If the Court declines to dissolve the TRO, at a minimum it should significantly increase Plaintiff's bond requirement. When Judge Garnett narrowed the TRO, she explicitly permitted Defendants to renew their request for a bond increase once a new judge was assigned. Judge

Garnett Endorsement Order, September 7, 2027. Such an increase is appropriate here. Rule 65(c) requires security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The $100,000 bond bears no relationship to the actual harm from this TRO. *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011) (bond should "provide[] the plaintiff with notice of the maximum extent of its potential liability"). Plaintiff has taken the position that the TRO prohibits ordinary course expenditures, including activity on the Ostium platform – the very core of Defendants' business – and the payment of legal, financial, and other restructuring advisors. If the TRO is deemed to have been improvidently granted, the potential harm to Defendants is the destruction of their entire business. While Plaintiff's potential liability would be astronomical in that circumstance, Defendants submit that Plaintiff's bond requirement be increased at least to $10 million.

Even if the Court rejects Plaintiffs' extreme position – which it should given Judge Garnett's observation that excluding ordinary expenditures from the TRO is in "the interests of Plaintiff and all creditors" and necessary to preserve Ostium as a going concern – bond should nonetheless be increased at least to account for the potential harm to Defendants' out-of-court restructuring process, which cannot be completed while under restraint. Defendants respectfully submit that Plaintiff's bond requirement be increased to $3 million if the TRO remains in place subject to Judge Garnett's limitations.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that their Motion should be granted.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Jon W. Muenz*

**SIDLEY AUSTIN LLP**

Jon W. Muenz
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: jmuenz@sidley.com

*Counsel for Defendants Ostium Foundation, Ostium Labs Co., DeltaX Ltd., and DX Group Limited*

*/s/ Alexander C. Drylewski*

**SKADDEN ARPS SLATE MEAGHER & FLOM LLP**

Alexander C. Drylewski
One Manhattan West
New York, NY 10001
Telephone: (212) 735-2129
Facsimile: (917) 777-2129
Email: alexander.drylewski@skadden.com

*Counsel for Defendant Kaledora Kiernan-Linn*