**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESS FRONTIER LLC,<br><br>Plaintiff,<br><br>-against-<br><br>OSTIUM FOUNDATION; OSTIUM LABS CO.; DELTAX LTD.; DX GROUP LIMITED; KALEDORA KIERNAN-LINN; and JOHN DOE TRANSFEREES 1–10,<br><br>Defendants. | **Case No. 1:26-cv-07645**<br><br>**DECLARATION OF PATRICK VENTER IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER, DENY CONFIRMATION OF ATTACHMENT, AND DENY EXPEDITED DISCOVERY** |

I, Patrick Venter, pursuant to 28 U.S.C. § 1746, declare as follows:

## BACKGROUND AND QUALIFICATIONS

1. I am a Partner in the Restructuring practice of Sidley Austin LLP ("Sidley"), based in the New York office. I focus my practice on leading companies, creditors, and investors in complex restructuring transactions, including out-of-court restructurings, liability management transactions, and distressed mergers and acquisitions. I am admitted to practice in New York and Massachusetts.

2. Together with my Sidley colleague Jon W. Muenz, I serve as counsel to Defendants Ostium Foundation, Ostium Labs Co., DeltaX Ltd., and DX Group Limited (collectively, "**Defendants**") in connection with their restructuring efforts. I submit this declaration in support of Defendants' Emergency Motion To Dissolve the Temporary Restraining Order, Deny Confirmation of Attachment, and Deny Expedited Discovery. I have personal knowledge of the facts set forth in this declaration and, if called to testify, could and would testify competently to the same.

3. Except as otherwise indicated, the facts set forth in this declaration are based upon my personal knowledge of and participation in the events described, my communications with Defendants and their other advisors, and my review of relevant documents and correspondence.

A. **DEFENDANTS' GOOD-FAITH RESTRUCTURING PROCESS**

4. Following the security incident affecting the Ostium protocol in July 2026, Defendants engaged Sidley Austin to serve as legal counsel and Alvarez & Marsal ("A&M") to serve as financial advisor in connection with a contemplated out-of-court restructuring process. Defendants also engaged Cayman Islands legal counsel in connection with matters relating to Ostium Foundation. The restructuring team has been actively engaged in advising Defendants on their restructuring options and in facilitating discussions with Defendants' creditor constituencies toward a consensual resolution.

5. At all times relevant to this proceeding, Defendants have been engaged in a good-faith, professionally supervised restructuring effort. The engagement of A&M and restructuring counsel reflects Defendants' commitment to stabilizing the Ostium enterprise and maximizing recovery for all creditors in an orderly process. Improperly dissipating or concealing assets is antithetical to that effort, and Defendants have had no intention of doing so.

6. In the weeks prior to the filing of the TRO application, A&M worked with Defendants to prepare and share financial information with their creditor constituencies – including Minghui Zheng, an unsecured creditor who assigned his claims to Plaintiff – pursuant to the NDA. That process included making available detailed cash schedules, balance sheet information, and financial projections, as well as a proposed recovery framework. Those materials were shared for the purpose of facilitating frank settlement discussions, not for use in litigation.

## B. COMMUNICATIONS WITH PLAINTIFF'S COUNSEL PRIOR TO TRO APPLICATION

7. A&M delivered an initial version of a proposed recovery framework term sheet to Zheng on August 21, 2026. A revised version was provided on August 28, 2026 (the "Term Sheet"). The Term Sheet was a proposal for a consensual out-of-court restructuring, prepared with the assistance of A&M and confidentially shared with certain major creditors as part of that process. Its tiered recovery schedule – offering higher cash recovery percentages to creditors who elected earlier – is a standard feature of out-of-court restructuring proposals, used routinely to encourage early creditor alignment and reduce the costs and uncertainty of a prolonged process.

8. On September 3, 2026, at 11:11AM ET, A&M received a message from a representative of Zheng stating that "We have been looking over the docs with our lawyers and have some questions for your lawyers, you can reach them at [e-mail contact information]." A member of my team reached out to Zheng's lawyers less than 20 minutes later, at 11:28AM, requesting availability for a call that day. We did not hear back. We followed up with a renewed request for a call at 8:23AM the next morning. Over 8 hours later, we received a response indicating a willingness for a call that day, which was subsequently held at 5:30PM ET.

9. During that call, I introduced myself and Sidley's role, briefly described the restructuring process and the involvement of A&M, and indicated that we would welcome an opportunity to speak further about the Term Sheet and a consensual resolution. Plaintiff's counsel said he was not yet familiar with the details of the term sheet and would need to review it and speak with his client before further discussions and negotiations. The call was brief, cordial, and entirely preliminary in nature. Plaintiff's counsel did not raise any concern about imminent asset dissipation, did not indicate any intent to seek emergency relief, and expressed no urgency of any kind. No reference was made to Plaintiff's need for legal relief of any kind, imminent or otherwise.

Plaintiff's counsel did not suggest that emergency judicial intervention was being considered, and expressed no concern about asset dissipation.

10. At one point, Plaintiff's counsel indicated sympathy and understanding for the difficult situation facing the Company. I indicated a willingness to extend the September 4, 2026 "Early Participation Deadline," subject to client approval. The call ended without any indication that Plaintiff intended to seek any form of emergency court action.

11. Nothing in the Term Sheet indicated that Defendants intended to improperly dissipate, conceal, or transfer assets. To the contrary, the Term Sheet proposed that Defendants retain working capital, maintain their business operations, and satisfy creditor claims through a structured, professionally supervised process – the opposite of dissipation.

12. A few hours after the 5:30 PM call, on the evening of September 4, 2026 – the Friday of Labor Day weekend – Plaintiff filed the Complaint and the emergency TRO application, without any further communication to Defendants or their counsel. I had no advance notice that Plaintiff intended to file emergency papers that evening.

13. In a subsequent conversation with Plaintiff's counsel after the TRO was entered, Plaintiff's counsel acknowledged, in substance, that the TRO application was intended to serve as a negotiating tool to obtain improved settlement terms from Defendants – not because there was any genuine emergency or imminent risk of asset dissipation.

14. At no point during any of my communications with Plaintiff's counsel, either before or after the TRO was entered, did Defendants or their counsel indicate any intent to improperly dissipate, conceal, transfer, or otherwise impair any assets. Defendants' position, expressed consistently throughout, has been that they are committed to a good-faith restructuring process with the goal of achieving a consensual resolution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of September, 2026, in New York, New York.

______________________________

Patrick Venter
Partner, Sidley Austin LLP